UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No. 17-MJ-0046 (BAH) |
| DAVID ALAN JOHNSTON, | Chief Judge Beryl A. Howell |
| Defendant. | |

MEMORANDUM OPINION

The defendant, David Alan Johnston, has been charged in a complaint with one count of

Travel With Intent to Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b),

Compl. at 1, ECF No. 1, and has been held without bond since his arrest on February 1, 2017,

Min. Entry (dated Feb. 1, 2017).  Following the government's emergency appeal of a magistrate

judge order releasing the defendant, *see* Gov't's Mot. for Emergency Stay and Review of

Release Order ("Gov't's Mot."), ECF No. 16, this Court, at a hearing on September 22, 2017,

denied the defendant's motion for pretrial release, *see* Def.'s Mot. for Limited Pretrial Release

for the Purpose of Obtaining Medical Treatment for Cancer Diagnosis ("Def.'s Mot."), ECF No.

5; Min. Entry (dated Sept. 22, 2017).  This Memorandum and Order sets out the findings and

reasons for detention.  *See* 18 U.S.C. § 3142(i) (requiring that a detention order "include written

findings of fact and a written statement of the reasons for the detention"); *see also United States

v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011) (noting that the Bail Reform Act requires a

pretrial detention order be supported by "'a clear and legally sufficient basis for the court's

determination'" in written findings of fact and a written statement of the reasons for the

1

detention or in "'the transcription of a detention hearing'" (quoting *United States v. Peralta*, 849

F.2d 625, 626 (D.C. Cir. 1988))) (per curiam).

## I.      BACKGROUND AND FINDINGS

The defendant was arrested on January 31, 2017, for one count of Travel with Intent to

Engage in Illicit Sexual Conduct, in violation of 18 U.S.C. § 2423(b), Compl. 1, after he had

traveled to Washington, D.C. from Virginia, in accordance with a plan to meet and engage in

sexual acts with a purported nine-year old girl, *see* Gov't's Mot. at 9–10.  According to the

Complaint and the government's proffer, these plans had been arranged during the course of nine

days of communications that the defendant had with D.C. Metropolitan Police Detective

Timothy Palchak ("UC"), who while acting in an undercover capacity as part of the Metropolitan

Police Department-Federal Bureau of Investigation Child Exploitation Task Force, pretended to

be the girl's father.  *See* Compl., Attach 1, Stm. of Facts in Supp. of Compl., 1, 10–11, ECF No.

1-1; Gov't's Mot at 3.

The defendant initiated communications, on January 22, 2017, by sending the UC a

message regarding the former's enjoyment of "taboo sex" over a free mobile application named

"Kik."  Gov't's Mot. at 3–4.  Between that date and January 31, 2017, the defendant and UC

exchanged messages, in which the defendant described in detail the sexual acts he intended to

perform on the UC's purported nine year-old daughter and how he sought to prepare.  *See, e.g.,*

*id.* at 7 ("I'll let her suck me a little then I'll stroke while she Sucks you and I'll cum above her

pussy. . . . "I'm thinking of using one if her dildos and rolling it in my cum then letting her suck

it off while I eat her pussy); *id.* at 9 ("I can't wait to finger her then Lay her on a table and spread

her legs to eat her while she Sucks you."); *id.* at 7 (explaining defendant "would not be having

sex with his wife [the] weekend [before] because wanted to 'save it for' the UC's nine-year-

old"). When the UC asked the defendant if he was actually "interested in meeting or just enjoy[s] the fantasy of it," the defendant said "Both." *Id.* at 5.

The defendant, in his conversations with the UC, revealed personal information and admitted to at least two other instances of engaging in sexual abuse of children. The defendant, for example, shared over KiK information about his family, which was later confirmed by law enforcement, including the names, ages, and residence of his children, as well as details about his wife. *Id.* at 8. The defendant also admitted that he had sexually abused his middle daughter, beginning when she "was eight years old while her mother 'was gone on business trips a bunch.'" *Id.* The government confirmed from personnel records obtained from the Air Force that "the defendant was court martialed after pleading guilty to illicit sexual contact with a child under the age of 16, and as a result, was discharged from the service for bad conduct." Gov't's Mot. at 14. In an interview with law enforcement, "[t]he defendant's now-adult daughter recently confirmed that the defendant sexually abused her for years, beginning from the time she was eight years old." *Id.* The defendant's counsel also acknowledged the abuse in the September 22, 2017 hearing before this Court. *See* Rough Hr'g Tr. (Sept. 22, 2017) at 40:4–24 (providing defendant's counsel's response to the Court asking if "the abuse of their daughter all occurred when Mrs. John[ston] was married," with "Right," and explaining "that there was an incident 27 years ago for which Mr. John[ston] was court marshaled," and "was dishonorable discharged").[1]

Regarding the defendant's behavior more recently, the government has provided a KiK chat and email from the defendant that demonstrate "[t]he defendant also has known associations with individuals who have a sexual interest in children and/or who have access to children."

---

[1]     According to the government's proffer, the defendant lied on a 2010 SF86 form that his military discharge was "honorable" rather than "dishonorable." Gov't's Mot. at 28 n.14; *id.*, Ex. 5 at 5, ECF No. 16-3.

Gov't's Mot. at 20 (showing defendant telling UC in chat that "I have a local friend with a 12 year old. He had his girlfriend and me over one night and was showing his daughter. He came on her pussy and the girlfriend started eating the little girl"); *id.*, Ex. 1 at 1, ECF No. 16-1 (providing email from defendant stating "I have another friend that has a 12 year old that I played with last year").

In addition to these admissions of at least two other instances of the defendant engaging in sexual abuse of a child, the government proffered that the defendant is "also under investigation by Virginia authorities for arranging to have sex with a 14-year-old child, conduct uncovered through an entirely separate undercover operation conducted by Virginia law enforcement." Gov't's Mot. at 14. In fact, the defendant's lengthy pretrial detention is partially attributable to efforts to reach a "global" disposition of potential charges against him arising from the instant investigation as well as the local Virginia investigation. *See* Rough Hr'g Tr. (Sept. 22, 2017) at 28:3–5.

On September 4, 2017, the defendant sought pretrial release in order to obtain medical treatment from the medical professionals of his choice after he was diagnosed, in June 2017, by medical personnel in the Department of Corrections ("DOC") with colon cancer. Def.'s Mot. at 1, 3-5. The defendant, "[b]ased on "voluminous medical records documenting [his] medical treatment by [DOC] versus the treatment [he] would be afforded through his health insurer," argues he should be "released so as to obtain the best possible treatment for his cancer." Def.'s Response to Gov't's Mot. for Emergency Stay and for Review of Release Order ("Def.'s Response") at ¶¶ 1, 3, ECF No. 20. Although, based on that record, "[t]he defendant argues that the Court can infer that he will receive inadequate medical care going forward because DOC has provided inadequate care to date, as evidenced by the delay in his treatment," the government

4

cites the same "medical records [to] demonstrate that the defendant delayed his own treatment by cancelling and refusing appointments." Gov't's Mot. at 26. "The defendant has provided no evidence that he will receive inadequate medical care while incarcerated. The mere fact that this defendant has private insurance and prefers to be treated elsewhere is not a basis for this Court to treat him differently from any other inmates currently receiving cancer treatment." *Id.* 26–27.

The Magistrate Judge granted the defendant's motion for release, following several hearings, on September 21, 2017. In her written memorandum opinion, Mem. Supp. Pretrial Release Order, ECF No. 21, released after this Court had granted the government's request for review and denied the defendant's motion, the Magistrate Judge explained that while "reluctant to release" the defendant, she was granting the motion based on the defendant's medical history, *id.* at 11, and by imposing stringent requirements for his twenty-one day release, *e.g.,* requiring the defendant's wife to serve as supervisor and imposing, *inter alia*, GPS monitoring, limits on outside access and access to minors, limits on use of devices, no internet, and password resets, the defendant's motion, *id.* at 15–17. The government's appeal followed.

## II.    LEGAL STANDARD

A motion under 18 U.S.C. § 3145(b) for review of a Magistrate Judge's detention order requires that the Court review *de novo* whether conditions of release exist that "will reasonably assure the defendant's appearance in court or the safety of any other person or the community." *United States v. Hassanshahi*, 989 F. Supp. 2d 110, 113 (D.D.C. 2013) (citing 18 U.S.C. § 3142(e)(1)). "'The Court is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *United States v. Hubbard*, 962 F. Supp. 2d 212, 215 (D.D.C. 2013) (quoting *United States v. Sheffield*,

799 F. Supp. 2d 18, 20 (D.D.C. 2011)); *see also United States v. Hitselberger*, 909 F. Supp. 2d 4, 7 (D.D.C. 2012).

The Bail Reform Act of 1984 provides that "a person awaiting trial on a federal offense may either be released on personal recognizance or bond, conditionally released, or detained," *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) (citing 18 U.S.C. § 3142(a)), but only detained after a detention hearing, 18 U.S.C. § 3142(f), consideration by the judicial officer of "the available information concerning" enumerated factors, *id*. § 3142(g), and a finding, supported by "clear and convincing evidence," *id*. § 3142(f), "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id*. § 3142(e)(1).  "Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense involving a minor victim under [18 U.S.C. § 2423]."  *Id.* § 3142(e)(3)(E).[2]

In determining whether conditions of release exist that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer must consider four factors:

    (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim;
    (2) the weight of evidence against the person;
    (3) the history and characteristics of the person, including . . . the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past

---

[2]    The defendant has not been indicted, and, as a result, no indictment establishes probable cause to believe that the defendant committed the charged offense.  Nonetheless, the government has proffered evidence transcripts of the defendant's communications with the UC, his plans to engage in sexual acts with the UC's purported daughter, and his admissions regarding his travel into D.C. and intent to meet the UC and his purported daughter.  For that reason, this Court finds that the government's proffer provides the requisite probable cause, and thus the rebuttable presumption of detention applies.

conduct, history relating to drug or alcohol abuse, criminal history, and record
concerning appearance at court proceedings; and . . . whether, at the time of
the current offense or arrest, the person was on probation, on parole, or on
other release pending trial, sentencing, appeal, or completion of sentence for
an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that
would be posed by the person's release.

*Id.* § 3142(g). Both the government and the defendant may offer evidence or proceed by proffer.

*United States v. Smith*, 79 F.3d 1208, 1209–1210 (D.C. Cir. 1996).

## III.   DISCUSSION

Consideration of the four factors, under 18 U.S.C. § 3142(g), as discussed below,

establishes that continued pretrial detention is warranted here.

### A.   The Nature and Circumstances of the Charged Offense

The first factor, the nature and circumstances of the charged offense, weighs in favor of

detention because the charged violation of 18 U.S.C. § 2423(b) pending against the defendant is

a serious crime, involving the defendant's travel with the intent to engage in illicit sexual

conduct with a nine year-old minor victim. Consequently, the rebuttal presumption that no

condition or combination of conditions will reasonably assure the safety of any other person and

the community applies, under 18 U.S.C. § 3142(e)(3)(E); *see also* Compl. at 1; Gov't's Mot. at

15–17. Moreover, because § 2423(b) allows for imprisonment up to thirty years, the defendant is

facing charges for similar conduct in Virginia, and the government is representing a global plea

as a potential offering, *see* Rough Hr'g Tr. at 28:3–5, the defendant may face substantial prison

time. For these reasons, this first factor strongly favors detention.

### B.   The Weight of the Evidence

The weight of the evidence is strong and therefore also strongly favors pretrial detention.

In this case, the government has provided transcripts, as detailed above, of explicit and

disturbing communications, in which the defendant agrees to engage in illicit sexual conduct with a minor victim, the purported nine year-old daughter of the UC. *See* Gov't's Mot. at 7–10. Notably, the defendant specifically stated that he was interested in "both" enjoying the fantasy and actually meeting. *Id.* at 15. Moreover, the evidence shows that the defendant "executed the plan, traveling nearly an hour from his workplace near Fredericksburg, Virginia into Washington D.C. to meet the [UC] at the prearranged location." *Id.* at 16. "[A]lthough the defendant attempted to claim in his post-arrest interview that he was merely involved in 'fantasy,' the defendant himself acknowledged during the same interview that he traveled into Washington D.C. to 'meet him [the UC] and then meet her [the purported daughter]' and that he understood the UC was engaging in sexual acts with his own daughter." *Id.* at 17. The record also includes statements from the defendant admitting abuse of his daughter, *id.* at 4, and his sexual abuse of at least one other minor, *id.* at 20. For the foregoing reasons, the weight of the evidence very strongly favors detention.

## C.    The History and Characteristics of the Defendant

The most startling and troubling aspect of the defendant's history is that the instant arrest is not the first time he engaged in illicit sexual conduct with minors. He has a prior conviction, albeit twenty-seven years ago, for sexually abusing his adopted daughter—a fact that is corroborated by both his dishonorable discharge and confirmed by the victim herself. *Id.* at 14. Moreover, the instant arrest is not the only current incident of the defendant engaging in this illegal and dangerous conduct. At virtually the same time that the defendant was engaging in conversations with the UC in connection with this case to engage in sexual activity with a nine-year old, he was also apparently having conversations with a purported fourteen year-old female,

8

which was uncovered through a Virginia detective conducting a separate undercover operation. Gov't's Mot. at 14, 19–20.

Nevertheless, the defendant rests on his current medical diagnosis of colon cancer and complaints about the level of medical care provided at the DOC as outweighing any other consideration for his release, claiming that his chances of survival not only weigh in favor of, but actually depend on, release. Def.'s Response ¶ 3. Although the magistrate judge was persuaded by this argument, despite finding that other factors weighed in favor of detention, Release Mem. at 10–13, this Court cannot agree. DOC has experience treating inmates for cancer, is providing such medical care to inmates now, and stands ready to provide treatment to the defendant. Gov't's Mot. at 23; *id.*, Ex. 2, ECF No. 16-2 (explaining DOC's ability to handle defendant's care). While understandable that the defendant would prefer to obtain treatment from the medical professionals of his choice, with his wife and anyone else he wants by his side, and without security precautions, like shackles, *see* Def.'s Response ¶ 1, by his alleged conduct, he has forfeited that choice. The defendant's history and characteristics weigh strongly in favor of continued detention.

### D.      The Nature and Seriousness of the Danger to the Community

The final factor also favors detention. Given the considerations discussed with respect to the other three factors, including the weight of the evidence against the defendant, and his prior conviction and dishonorable military discharge for abusing his daughter, and his involvement virtually simultaneously with the instant charge in similar conduct with a Virginia law enforcement officer, the possible danger to the community is significant and collectively outweighs any of the defendant's ties to the community and even the most stringent of the release conditions crafted by the magistrate judge. *See* Release Mem. at 13 (attempting to

impose conditions, while recognizing that "[i]f Mr. Johnston were released and given access to minors, either directly or through the internet, that would severely endanger the community"). The defendant will be out in the community, subject to the custody of his wife, whom the defendant has been able to hood-wink before about his abuse of their own daughter and more recent abusive activity.[3]  This simply does not provide the assurances necessary to permit release of this defendant.

Hence, the Court finds that the defendant has not rebutted the presumption that no conditions will reasonably assure the appearance of the defendant as required and the safety of the community.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the defendant has failed to rebut the presumption for detention that applies here, and the government has demonstrated "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. § 3142(e)(1).  Accordingly, the government's motion to revoke the magistrate judge's order is granted and the defendant's motion for release from custody to obtain medical treatment is denied.  The defendant shall be held without bail pending the resolution of the charges against him.

Date: September 28, 2017

_____
BERYL A. HOWELL
Chief Judge

---

[3]    As the government states: "The defendant's wife has . . . demonstrated a troubling lack of insight into the danger the defendant poses, as reflected in the statements she made this year to a psychological examiner hired by the defendant, in which she rationalized the defendant's sexual abuse of her eight year old daughter as a form of 'angry pay back' for marital issues they were having."  Gov't's Mot. at 29; *id.*, Ex. 6, ECF No. 16-4.  The government has also provided an interview with the wife in which she stated that there was no abuse, *id.*, Ex. 7, ECF No. 16-5, despite the fact that the defendant pled guilty in 1990, Gov't's Mot. at 29.